May it please the Court. Good morning, Your Honors. My name is Ethan Vallow, and today I speak for Toyrieon Sessions. I'm going to watch my clock and do my best to serve three to serve, save three. I'm joined today by Nara Sugino, my associate, who's also on the briefs with me. And I'd like to spend our time together this morning, if I may, addressing the two Fourth Amendment issues I'm going to submit on the instructional error. As the So let's begin with the opening issue. The initial seizure in May of 2017 of Toyrieon Sessions' cell phones, in particular the iPhone 7, violated the Fourth Amendment. And as Judge Forrest, you were on Baker just last year, where this Court reiterated, it's a bedrock principle of constitutional law that a warrantless seizure is per se unreasonable unless the government can identify and establish a clearly established and well-delineated exception to the warrant requirement. Mr. Sessions made that motion below. It's a warrantless seizure. The phone, his first claim, was seized in violation of my constitutional right to suppress the evidence. The government opted for one and only one exception to the warrant requirement, and they declared the phone was appropriately seized as a search incident to arrest, citing shimmel in place. What the government failed to realize that in 2017, the Supreme Court of the United States, three years earlier, had declared loudly that there is no search incident to arrest for mobile phones. It does not exist. So their one exception that they claimed is invalid as a matter of law. What they could have done is they could have seized an incident to arrest, and immediately sought a search warrant. And that is Segura, that is Isaac v. MacArthur, that is this court's case as well. Isn't that what they did? No. They seized it and they put it on a shelf. They didn't charge them because of insufficient evidence, and they let the phone sit. In the government's words, they brag on it where it collected dust. Well, I guess I was trying to understand the distinction you were trying to draw, and what I thought you were saying is there's a difference between seizing incident to arrest and searching incident to arrest, and here they only seized the phone. Well, they justified on search incident to arrest, which doesn't exist, and to have a seizure incident to arrest, you must immediately seek a search warrant, diligently. It's a matter of hours, not days, according to Segura. And here they seized it for over a year, letting it collect dust. That's the violation. Okay, I have a question about that, because am I incorrect in understanding that he denied the phone being his? He told them, this isn't my phone? No. Let me clear that up, and let's go temporally. The seizure I'm talking about is in May of 2017. The government says they seized it from his pockets. He says they seized it from the property. Everyone agrees at the time of the seizure, and remember, the government makes a later standing argument, this is heard the day of trial. So the government's trial memorandum is filed. The government's position is we seized it from his pants pockets, and we seized it search incident to arrest, shimmel. That's their entire justification. Our first position is, our position in district court is, that's wrong. Riley said shimmel cannot justify the seizure at all. So that's gone. No justification, warrantless seizure, per se unreasonable. What they could have done is tried to take advantage of Illinois versus MacArthur and Segura, and immediately sought a warrant. I doubt that, but my question is, did he not say that's not my phone? No. In May of 2018, he denied using a number and said they were my phones and they were seized by the police. He never denied, disclaimed ownership at any time. That's exhibit 30-3 of the government's exhibit, and that's a year and a half after the seizure. And as we know from the abandonment case law, again, Baker, it's at the time of the seizure what the police officers know, say, heard and did. And the seizure in May 2017, they take it off his body or from his apartment. He doesn't disclaim ownership and they don't seek a search warrant. The constitutional violation is established ab initio. There was no right to take the phone. Does he ever ask for the phones back? No, he doesn't know he can. It's booked into evidence. And remember, they don't charge him in the 2017 case. He doesn't get a lawyer. It doesn't get a case number. They take him off the street, seize his phones without a warrant and probable cause. The warrant did not establish any probable cause that the phones were involved in a 7-11 robbery. There's no evidence presented to district court that the phones were used in a 7-11 robbery. There's no probable cause to seize the phone. But doesn't he abandon the phones by not asking if he's not charged and he's just letting them sit there? Is he not abandoning the phone? No, that's taker's keepers. That's North Carolina B Bumpers. They were taken from him in a what he understood was according to a warrant. It was seized under color of authority. It does not his burden. If they charged him, they could only keep them through forfeiture proceedings. And abandonment's a question of intent. So one, they did not raise abandonment below. So it's waived. And that's Laura and that's Sherwin. So that's a factual argument. Did he demonstrate intent to waive them? There was no evidence that in May 17 he did that. They lied to district judge and said an oral argument. This is one E.R. 90. The second part of it after the seizure is did he have a possessory interest and did you have? Did they have legitimate reasons for delay on the possessory interest, which what your honors asking about abandonment? They told the judge he was in custody, but that was false. He was released the same day and the case wasn't charged. He was out of custody for four months. So the test is, did he have a possessory interest? Absolutely. And it was taken under color of law. They never told him he could get him back. They told me they were putting it in evidence. They were booking it. It was booked into evidence. So to abandon it, that means abandonment is he says the evidence has to show for the district court to find, even though they waived it. His position was my photos on the phone, my emails, my Facebook, my Instagram. I want the world to have it. I want the police to have it. I give this up. That's the record, his intent. They have to show at the time of the seizure. That's Baker as Judge Forrest was on. They can't show that there's no evidence. They waived that. They misrepresented his possessory interest because he was out of custody and there was no basis for delay. And still as we sit here today on July the 18th, years later, they've never identified one reason why they stole the phones without probable cause in a warrant, put them on a shelf and did nothing for years, for a year. There has to be a legitimate basis for the delay. You look at Mulder. What's the legitimate basis there? It's almost a year. It's, well, there was an appeal of a warrant. And while it went through the judicial system, the government was relying on its first warrant. When they lost that case, they sought a second warrant. And so the defendant brought a SIGURA challenge, like we do here, our second claim. And the court said, well, that's a legitimate reason for the delay. It was tied up in litigation. Here we have no probable cause to seize, no right to seize. And then we have the delay issue, no legitimate basis for delay, no basis whatsoever. Interference with possessory interest, which is the only other prong. He establishes that and they misrepresented that. So in the Fourth Amendment, they don't have the phone, either initially or maintaining it. And the LAPD can't be in the process of taking people off the street and grabbing their phones without warrants and probable cause and cataloging them forever. And when you do it under color of law, it doesn't transmute it into abandonment. Abandonment has to be the defendants giving something up voluntarily. So the charges were dismissed on the 7-11? No charges were filed. They seized his phone. They released him the same day. Three simple remedy for that. I mean, like, you know, just making a motion for return of property. Oh, there's things he could have done. The question is, he didn't know. They didn't charge him and they booked into evidence. They seized him in the color of right. That'd be a good reason to, you know, move to get the property returned because he's never charged. Well, the question is, whose burden is it? And was it waived? First of all, it's their burden to establish this fact issue. They didn't bring it up in the district court. They didn't present the facts to the district court so we have waiver. And if they did bring it up now, they still can't meet the intent requirements at the time of the seizure. When they took him out of his pants, he has to abandon them then. In that moment, they have to say, I'm so glad you're taking my phones by warrant. Don't worry about the warrant. Keep them forever. That's not these facts. And so it's a very simple case. They couldn't take the phone. They couldn't keep the phone. The one thing they had to do was immediately, if they wanted to do it, was go to a judge. And they didn't do that. They chose not to do that. And what's interesting is this happens on May 7th. The case is that the DA says insufficient evidence on May 31st. What do they do with the intervening 24 days? They should have released the phone with him that day because they had no warrant. They had no PC. But if they're going to keep it, then they got to say, well, we're going to search it for evidence to see. So what they were supposed to call him up and say, okay, there's been no finding and no probable cause. We're calling you. You better come get your phones. Oh, exactly. The same way in federal cases, you get notices. We're going to destroy the evidence. We're going to return evidence. I sign release forms at my office all the time. When they're destroying the evidence. Right. Or taking it or forfeiting it. His possessor, it's his computer essentially. How can the government come in and grab someone's phone? That's a violation of the law. That's the violation. If I'm leaving here today and some court officer grabs my phone, if I get on my flight because I'm going back to Northern California and I don't call up immediately, I'm acceding to that. I'm validating that violation of my rights. Not even close. They had no authority to take it. They had no authority to keep it. They never had probable cause. And that's an important factor too. Most of the cases, there's probable cause to get the object. Or it's contraband. Riley goes into extraordinary detail about what these phones can do and how private they are. When we look at Medina, which is a government's case, the one thing, it's interesting, it goes back to Elkins. And Elkins talks about how there's a difference between seizing someone's privacy right and seizing an object which is a possessory interest. And that's Elkins in 1960. Riley washed that away. Riley talks about how the phone is our business. The phone are our most intimate communications and contacts, personal photographs, our businesses. To seize that without PC and a warrant is outrageous. The only thing to justify is seeking a warrant. And Riley was clear in 2014. And here we are in 2017. The United States Attorney's Office of the Central District of California, one of the most august prosecuting agencies, told a federal judge you can seize search warrants, search phones, incident to arrest. Three years after, the Supreme Court said absolutely not. Deterrence and suppression is about instruction and ensuring the law is complied with by law enforcement. The fact that we're here today and still they've not even realized that the seizure was problematic, that they've papered over it, that without probable cause and then seeking a warrant, which is probably why they didn't seek the warrant, they can't just grab stuff and hold it. That's our claim. We ask the court to validate it, vacate the convictions, change this policy, ensure the privacy interests of everyone in the Central District, get a warrant. That's what the Supreme Court said. Unless you have questions, I'll reserve. Thank you. May it please the court. Good morning. Assistant United States Attorney Bruce Reardon on behalf of counsel from the very beginning of the case, Assistant United States Attorney Jeffrey Chemerinsky. Your honors, there are three principal pathways this court can and in the government's view should follow to affirm the district court's refusal to suppress the evidence below. First, the defendant failed to meet his burden at the motion to suppress hearing to establish actual standing with respect to challenging the iPhone. He could have filed a declaration as the court, as this court has told people to do and as our local rule instructs the defendants to do. He chose not to. Second, under the controlling law of this circuit, the Medina principle, the exclusionary rule bears no fruit as this court put it in Songja here because the federal investigators, the federal credit union robbery investigators in this case had no nexus in time, place or purpose, no shared zone of interest with the independent 7-11 investigation about which counsel complains. And therefore, under the Medina principle, as we stated in other cases in the circuit, the exclusionary rule simply does not apply to the conduct of the federal credit union investigators in this case. And third, even if this court were to feel, declare that the exclusionary rule should apply or does apply to the federal credit union investigators, their conduct fits squarely within the good faith exception to that rule. They did what they were supposed to do. They did exactly what Riley instructs and Justice Roberts could not be clearer in Riley. Justice Roberts has a section, the court has a section on seizing the phone incident to an arrest, holding it and searching it. Now the 7-11 investigators seized the phone properly pursuant to an arrest warrant. It wouldn't be just a courthouse security officer stopping a counsel. They seized it, booked it in evidence, took no action. When the federal credit union investigators learned, as in Medina, when the federal investigators learned of the existence of those phones sitting in, as the district court put it so colorfully, collecting dust in LAPD's custody, they hustled. They did what Riley tells them to do, what the cases in this circuit, one of the cases cited in defendant's brief, Justice Wood in Burgard says, hustle and get a warrant. And that's what they did. And that warrant was, had no material omissions with respect to the case. In fact, had set forth to the magistrate everything of material importance, including footnotes telling the magistrate, a footnote telling the magistrate, there's been a lineup, your honor. And at that lineup, the victim witnesses in the bank were unable to select Mr. Sessions. They couldn't identify anyone. Nevertheless, for the other reasons in this warrant, I, the affiant, believe there's probable cause to search those phones and that if the search of those phones will find evidence related to the federal credit union robbery. And the real specific reason for that was that the 7-11 arrest, independent armed robbery, the arrest is on May 4th, 2017. The federal credit union robbery, armed robbery took place on April 21st, 2017, two weeks earlier. And when the investigators, Special Agent Sanchez and his colleague on the task force from the LAPD, learned of that, learned of those phones existing, they said, we need to get a warrant. They did that. They disclosed all the material facts to the magistrate, including the original seizure of the warrant, the date that it was seized, other warrants that had been sought in the case. And it was a comprehensive filing with the magistrate. Therefore, even if the exclusionary rule were to apply, we submit that the actions of the federal credit union investigators were very much in good faith. So counsel, as you laid out your three primary paths for us, it was curious to me that one of the arguments I didn't hear you make is that that original seizure of the phone incident to arrest was valid. Do you not want us to address that? You want us to resolve this on the second investigation resolves any taint or he doesn't have standing? Our position is that the court does not need to reach the fact that the initial seizure was valid. But our position is that the initial seizure very much was valid. That was what the district court found at the district court level, what we argued there and what we argue in our briefs. But given the Medina principle that separates, that lays out literally, as this court put it in Song Cha, that in certain categories of cases, the exclusionary rule bears no fruit. This is one of those categories. But to answer your question very specifically, that initial seizure pursuant to an arrest and search warrant, those investigators did what Riley tells them to do, the best course, seize the phone if you're interested in it, get a search warrant if you want to. They didn't get a search warrant, but also to their credit, they didn't look at the phone at all. They left it, they didn't look into the contents of the phone. Had they looked into the contents of the phone, they would have learned as the federal investigators learned a year later that one of the phones was subscribed to by a defendant, had his to go back in time to the motion to suppress, and the other two phones did not belong to the defendant. But they didn't look in because that's proper. But see, that takes us back to the argument, which we submit to the court, is a textbook red herring that the LAPD should have simply returned those phones. And the district court took issue with that too. What is the LAPD supposed to do with 1,000,911 calls a year? And the 9,000 police officers in the LAPD would have to track down every single arrest and seizure. But we don't need to accept that burden. It's illogical. There's no burden on the LAPD to find Mr. Sessions and return his phones. Mr. Sessions had the obligation and the opportunity to ask for his phones back, which he never did, conceded at the district court level, and as defense counsel said at the district court level, which is my experience as well in 30 years now of being a prosecutor. Mr. McCurry at defense counsel said, I ask for property back all the time. That's right. Defense lawyers do. And the California courts have a form 200 that allows civilians like Mr. Sessions to ask for his property back too, or certainly put into the record that they don't want anything forfeited. He never took those actions. He got a new phone. He moved on. And later, when he was interviewed by Special Agent Sanchez, he danced around in a series of evasions and damaging admissions during that interview. That multiple denials, I can't remember, it might be mine, sounds like my phone, but damaging to the degree that we played them in court for the jury. That pathway is there. I could have opened by saying there are multiple pathways, Your Honor, but just thought that multiple pathways. No, you did, and you set out three. There are three, and there are two others, actually. There is the finding that the seizure was incident to arrest was lawful, which is what the district court, and this district court, as the district courts do in our district, was meticulous on the record, examining, giving defense counsel every opportunity to argue, breaking down the facts with defense counsel, indicating to defense counsel, as this district court uses a certain nomenclature, I'm struggling with your argument. And then finally ruling, I think ER 103-104, for all the reasons I've now stated, I deny your motion. The district court said it was a lawful seizure in the first place for the reasons the district court set forth, stacking up the evidence of the 7-11, and the Federal Credit Union Investigators Act acted lawfully. And then there is a fifth pathway, should the court get there, and that is that there was substantial, independent, incredible evidence, separate and apart from the limited and restricted evidence that came in through the iPhone 8-104, of defendant's text messages and a handful of web searches that came in through the iPhone had one important text message, the code to the bathroom that was used as the staging area for the armed robbery, where Mr. Sessions hid out before the armed robbery so that he could hook up with his insider colleague and enter the bank through the back door. However, at trial, independent, significant, incredible evidence of defendant's own admissions, damaging admissions, during a lengthy, very calm and collected interview by Special Agent Sanchez, yes, Durante Tompkins, my cousin, recruited me for a robbery, and yes, after the robbery, I went out to a club with Mr. Tompkins and he told me about it, and I watched him spending money, but I didn't join him at the robbery. And evasions, where he danced around knowing Mr. Tompkins and when he knew him, and his possession of the phone. In addition to that, powerful evidence from the historical cell site location information and subscriber information. Now that's no delay argument fits with that. That was not the contents of the phone. What that evidence showed from Special Agent Sanchez together with the expert Bennett, what that evidence showed the jury was strong circumstantial evidence that on the day of the robbery, Mr. Sessions, through an analysis of the pattern of usage, what Bennett called the pattern of life of two phones. The phone belonging to his mother, Erica Nelson, and his 8104 phone that Mr. Sessions switched out his phones on the day of the robbery, used his mother's phone, Erica Nelson, left the 8104 phone at home, and then followed in tandem, was tracked in tandem from cell site tower to cell site tower from his residence area, vicinity, to the vicinity of the Federal Credit Union in Inglewood, and back. And that the nature of the phone calls that took place that day, phone calls from Erica Nelson, Mr. Sessions' mother, to Mr. Tompkins, to Esmeralda Ruiz, the girlfriend and live-in girlfriend of Mr. Sessions, and to the gentleman who owned the Dodge Avenger that resembled the getaway car, demonstrated to Special Agent Bennett that it's highly likely that the same person was using those phones during the different windows before and after for the 8104 phone, and on the day of the robbery for his mother's phone. And, Your Honors, the very clear video evidence of the pathway from the bathroom, where the code was used, all the way in through the back of the vault, and then the very intimidating situation in the vault, well, it's plainly, we showed that to the jury, that wasn't Erica Nelson. That was clear. And it wasn't Mr. Devante Tompkins, because of the build, size, and shape of the person. But the person did resemble Mr. Sessions in build, size, and shape. In addition, the circumstantial evidence linking Mr. Sessions to a Dodge Avenger that resembled the getaway car, which can be seen on the surveillance video. And finally, very compelling testimony from the cooperating witness, the cooperating defendant, the accomplice and insider, Iris Lester, who identified Mr. Sessions in court, who knew Mr. Sessions because he's the cousin of her boyfriend that came up with the idea for the robbery. So taken together, there's a fifth pathway. And unless the court has any other questions, I'll submit on that. Thank you. Thank you for your argument. I'll be brief. Let me take the government's, the government made five points. I'll address them in order. Can I, before you do that, I want to clear up something that I'm not sure I understood you when you were making your initial argument. Okay. Are you arguing that when it comes to seizing something incident to arrest, that there's a different rule for cell phones than for anything else that might be within the zone of acceptable? No, Illinois versus MacArthur, the government sees something. They don't have probable cause or warrant to justify the seizure. They must diligently obtain a warrant and the reasonableness of the time they do. So if, if, if what had been seized and kept for a long time was a set of keys or a notebook, same outcome, same argument you would be making. You're not making something specific to cell phones. Same outcome, same result. You can't see someone. It was seized without a warrant and there was no probable cause to seize the phone. They said it was taken off his person, which goes to the standing argument, which is they said it's the automatic. It was on his person. So we don't have to do it. And he said it was from the apartment, not my phone. But the second they took it off property, they have to go get a warrant. They can't. I guess there's, I fundamentally don't quite understand your argument because it seems like you're saying that the search seizure incident to arrest doesn't exist. It's not an exception that is recognized. Search incident. Clearly that's not true. Well, Riley, I'll quote Riley. Riley says search incident to arrest doesn't exist. Moreover, even though the search incident to arrest exception does not apply to cell phones. I have a question. Are you arguing there's a new rule or a special rule for a cell phone as opposed to everything else? I'm saying that Riley says you can't seize a cell phone incident to arrest on its face. I just read the quote. Yes. Yeah. So you can't. And when you see something incident to arrest without probable cause or a warrant, you have to go get a warrant and show probable cause and get judicial oversight immediately. You can't take someone's property and store it in a government locker until such time as you develop probable cause years down the road. Riley condemns it with cell phones clearly. The standing argument, Stiglitz in the Supreme Court says they can't even make it. In this court, Isaac says they acceded to contrary facts in the district court. They now gave it, they conjured up some 1970s supplemental authority that says you have to look at the information before the jurist at the time. The government's trial brief and indictment said he used this phone that was subject to suppression motion in the robberies. He had possessory interest. He claimed ownership. He claimed interest. The government is disputed. That argument's waived. And if it's not waived, the record supports standing. How do you address the good faith exception? Sungjoo Cha says the good faith exception in Berger to Seventh Circuit doesn't apply to Segura claims, delay claims. If you could cure the taint of the seizure and delay of the phone by just getting another warrant, then there's no Segura claims anymore. There's no reasonable time. And that's what this court said in Sungjoo Cha. And that's what the Seventh Circuit said in Berger that if you can wash away the taint of the illegal seizure and delay by just a further delay, a new authorization, the right goes away. So this court has addressed the issue. Das says this court, in a Segura claim, no good faith exception because the taint is the delay. Sungjoo Cha says the same thing. So I say this court's decided the issue and the panel is bound by it. The third thing, that was the second part. That was the good faith part. The Medina principle. You're out of time, so just sum up. I'll sum up. The Medina principle isn't a claim. It was waived. That's a Fruits argument which was not raised below, so it's absolutely waived under Laura. And even if so, the standard of the Fruits analysis, they have to show that the taint became, I'll give you the quote from Ramirez-Sandoval, 872 F. 2nd, 1392. I'm going to give you 96 to 97 of the court's opinion. That the attenuated basis exception to the Fruits, again waived, says it applies when the connection between the illegality and the challenged evidence has become sufficiently weak so as to dissipate the taint caused by the illegality. So my final note would be the government says no material omissions. They told the courts everything to get good faith, which has been waived. Please take a look at 1340, which is the government's, which is the government's search warrant application. And they suggest, they tell the, the only fair reading of this is they told, they told the district judge, that's my sentence, they told the district judge it was, the phones were seized pursuant to warrant, and that's a false statement. That's paragraph 20 and 21. Thank you for your time and patience, Your Honor. All right. The matter of Sessions v. United States is submitted.
judges: TASHIMA, FORREST, Cardone